Nov. Term,
1850.

Lewis
v.
Henley.

---

Lewis *v.* Henley and Others.

| 2 | 332 |
|---|---|
| 139 | 159 |

*Mandamus* issued on the application of *L.* against the trustees of school district, No. 6, &c., to show cause why they did not prevent "colored children, commonly called *Negroes*," from attending the public school taught in said district. *L.* was a white inhabitant and tax-payer of the district. *Held*, that the application for the writ should have stated that certain negro children were in attendance upon the public school *at the time of the application ;* that the trustees had been notified of the fact and required to remove said children, or cause them to be removed; and that they refused to do it.

*Held*, that the remedy by *mandamus* in such a case is probably appropriate.

A *mandamus* issues from the Circuit Court to a person or persons exercising an inferior authority, requiring the performance of a particular act which should be, but is refused to be, performed by such person or persons; and until such refusal is shown, the writ cannot be obtained.

Colored children are not permitted to attend our public schools, paying their own tuition, where the resident parents of white children attending, or desiring to attend said schools, object.

ERROR to the *Wayne* Circuit Court.

PERKINS, J.—This was a *mandamus* issued from the *Wayne* Circuit Court, upon the application of *James Lewis*, and directed to the trustees of school district number six, in township fifteen, in *Wayne* county, requiring them to show cause why they did not prevent "colored children, commonly called *Negroes*," from attending the public school taught in said district. Said *Lewis* was a white inhabitant and tax-payer of the district, and had children to send to school. Colored children attended the school but paid their own tuition to the teacher, receiving no benefit from the public money.

Nov. Term, 1850.

LEWIS
v.
HENLEY.

Friday,
November 29.

The trustees answered the *mandamus;* the applicant demurred to their answer; the Court overruled the demurrer, and rendered final judgment for the defendants, the trustees.

The demurrer to the answer goes back to the application, and brings before us the question of its sufficiency.

A *mandamus* issues from the Circuit Court to a person, or to persons, exercising an inferior authority, requiring the performance of a particular act, which should be, but is refused to be, performed, by such person or persons; and until such refusal is shown the writ cannot be obtained. In the present case, if colored children were admitted into the school and the trustees did not know it, or knowing it, did not know that any person objected, such a refusal to perform their duty did not exist as would authorize a *mandamus*. The application to the Circuit Court for the writ, therefore, should have stated that certain negro children were in attendance upon the public school *at the time of the application;* that the trustees had been notified of the fact, and required to remove *said children*, or cause them to be removed, from the school; and that they refused to do it. Without such statement, no ground is shown, no necessity, indeed, for the writ. This application did not contain such a statement, and the decision of the Court below against the applicant was right, though erroneously placed upon the ground that the application was well answered, instead of the ground that

Nov. Term,
1850.

Lewis
v.
Henley.

it was not sufficient to require an answer. The decision, therefore, will not be reversed.

This disposition of the case leaves the main question intended to be presented by it untouched; but as the counsel desire a decision of that question, that the labor of again presenting it, in some form, may be avoided, and we have no doubt upon it, we proceed to express our opinion. That question is, whether colored children may be permitted to attend our public schools, paying their own tuition, where the resident parents of white children attending, or desiring to attend said schools, object.

Chapter 15, R. S., p. 306, establishes the townships of the state for school purposes, and makes the "white inhabitants" of each a corporation, &c., the trustees of which divide the township into school districts. The several districts elect trustees for the management of business. These trustees levy taxes for the building of schoolhouses, and maintaining schools, but in so doing they omit "all *Negroes* and *Mulattoes*" in forming the taxable list. And section 102, p. 321, is as follows

"When any school is supported in any degree by the public school fund, or by taxation, so long as the money so derived shall be expending thereon, such school shall be open and free to all the white children resident within the district, over five and under twenty-one years of age."

The effect of these and other statutory provisions clearly is to limit the right of attending our district schools, as at present organized, as recipients of the public bounty, to free white children. So far all is clear. In the present case, however, the colored children did not attend the school as sharers of the public fund, but by paying their own tuition; and the question is, had they a right to do this? It may aid us in answering this question, to inquire, why the legislature has excluded them from attending at the public charge. This has not been done because they did not need education, nor because their wealth was such as to render aid undesirable, but because black children were deemed unfit associates of white, as school companions. Now, surely, this reason

operates with equal force against such children attending the schools at their own, as at the public, expense. In *Chalmers* v. *Stewart*, 11 Ohio R. 386, *Wood*, justice, in delivering the opinion of the Court says: " In this case the obligation not to admit blacks is imposed by statute. I have no hesitation, however, in laying it down as a general principle, in all cases, that a teacher of a public school is under the implied obligation to regard the morals of the youth entrusted to his care, and, should he so far disregard his duty as to admit the vicious and corrupt, controled by no sense of moral obligation, should he fill his school with prostitutes or thieves, or those openly profane or licentious, such teacher would forfeit all claim to compensation; and where the statute imposes the prohibition for reasons which were satisfactory to the law-making power, as to whom the teacher may admit to the privileges of his school, its enactments, if disregarded, must be followed by the same consequences."

It has been said that the blacks are entitled by the terms of the grant, to share the benefit of the school lands donated by congress. We need not look to this question; for even if so, it does not follow that they should enjoy that benefit in schools with the whites. Separate schools may be organized. We may also remark that the question whether the remedy by *mandamus*, in a case like the present, is the proper one, is not necessarily involved in this decision, and is not intended to be decided, though we incline to the opinion that this remedy is appropriate.

*Per Curiam.*—The judgment is affirmed with costs.

*J. Perry*, for the plaintiff.

*C. H. Test*, for the defendants.